IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL GRIGGS,<br>    Plaintiff,<br>        v.<br>SEPTA, et al.,<br>    Defendants. | CIVIL ACTION<br><br>NO.   14-6226 |

**MEMORANDUM RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Baylson, J.                                                                                                      July 28, 2016

## I.     Introduction

In this employment discrimination action, Plaintiff Crystal Griggs ("Plaintiff") has sued Defendants Southeastern Pennsylvania Transportation Authority ("SEPTA") and former SEPTA employee Luther Diggs.  Plaintiff alleges that Defendants violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.* ("PHRA"), and 42 U.S.C. § 1983.  Plaintiff bases these claims on allegations that Defendants denied her seven different promotions—either in retaliation for her complaints of discrimination or on the basis of her gender—and that Defendants (via Diggs) subjected her to both quid pro quo sexual harassment and a sexually hostile work environment.

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  ECF 25.  For the following reasons, Defendants' Motion shall be **DENIED.** As outlined below, there are sufficient factual disputes as to at least some of Plaintiff's claims to warrant a trial, and piecemeal resolution of the case is not an efficient use of judicial resources.

1

## II. Plaintiff's Complaint & Defendants' Motion

Plaintiff has asserted five causes of action against Defendants. ECF 1. However, there are at least nineteen (19) different potential theories of liability embedded within Plaintiff's five (5) claims.

Count One asserts a cause of action for gender discrimination in violation of Title VII. This count, however, includes the following nine (9) allegations:

- Seven (7) instances in which SEPTA allegedly promoted other employees over Plaintiff because of her gender;
- A claim that Diggs subjected Plaintiff to quid pro quo harassment; and
- A claim that Diggs subjected Plaintiff to a hostile work environment.

Count Two asserts a cause of action for retaliation in violation of Title VII. In this Count, Plaintiff recasts the seven (7) instances of failure to promote as retaliation for several discrimination complaints Plaintiff filed against SEPTA.

Count Three asserts a cause of action for gender discrimination in violation of the PHRA. This count mirrors Count One, except that Plaintiff asserts that Diggs is personally liable for aiding and abetting sexual harassment.

Count Four asserts a cause of action for retaliation in violation of the PHRA. This Count mirrors Count Two except that Diggs is once again asserted as having aided and abetted the retaliation.

Count Five asserts § 1983 claims against both Defendants, including the following three (3) allegations:

- A <u>Monell</u> claim against SEPTA;
- A claim for First Amendment retaliation; and

- A claim for Fourteenth Amendment violations stemming from the seven (7) failures to promote and Diggs' alleged quid pro quo and hostile environment harassment.

In their Motion for Summary Judgment, Defendants request summary judgment on all claims. ECF 25.

### III. Factual Background

Except where the Court notes that a factual issue is disputed, the following facts are either undisputed[1] or reflect Plaintiff's version of the facts in the record. This Court presents this background mindful of its duty to view all facts and inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Although the Court is denying Defendants' Motion, the Court recounts the allegations of this case in an effort to help the parties simplify the record in advance of trial.

The factual allegations can be broken into two categories: (1) those allegations related to Plaintiff's claims based on retaliation and sexual harassment and (2) those allegations related to SEPTA's failure to promote Plaintiff.

#### A. Allegations Related to Sexual Harassment and Retaliation

The following allegations support Plaintiff's claims that she was subjected to quid pro quo sexual harassment and a hostile work environment, and that she was retaliated against for complaining about such harassment.

##### 1. Plaintiff's Work History with SEPTA

Plaintiff began her employment with SEPTA in June 1988 as a revenue attendant, which is a management position. DSOF ¶ 1; PSOF ¶ 1. In this position she was accountable for the

---

[1] SEPTA submitted a statement of undisputed facts (ECF 25-1), to which Plaintiff responded (ECF 28-1) (collectively, "DSOF"). Plaintiff additionally filed a counterstatement of "disputed" facts (ECF 28-2), to which SEPTA responded (ECF 30-1) (collectively, "PSOF"). Statements that an opposing party "disputed" were deemed undisputed for purposes of this Motion if the party's explanation of the dispute was non-responsive or failed to reference supporting evidence in the record. Fed. R. Civ. P. 56(c), (e).

revenue that was brought in for an entire district. Pl. Ex. A (Griggs Dep.), 15:2-8. Six months later, Plaintiff was promoted to station manager, and in 1995 she was promoted to Assistant Director of Stations. DSOF ¶¶ 2-3. Plaintiff has not had any disciplinary actions within the last ten years, and she received at least two awards in that time. PSOF ¶ 11.

In August 2009, Plaintiff assumed her current position of Assistant Director of Surface Transportation, in which she is responsible for the overall operations of SEPTA's Frontier District. DSOF ¶ 7; PSOF ¶ 10. Plaintiff initially reported to Trubee Krothe, who reported to John Reynolds, who reported to Michael Liberi, who in turn reported to Diggs (who was then Assistant General Manager of Operations). PSOF ¶ 5. Following Krothe's retirement in December 2011, Plaintiff served as Acting Director of Frontier District (in addition to continuing to fulfill her duties as Assistant Director) until February 2012. DSOF ¶ 52; PSOF ¶ 54.

As outlined in greater detail below, Plaintiff applied for seven (7) positions at SEPTA between the fall of 2011 and the spring of 2014. In each case, her application was denied.

### 2. Plaintiff's Relationship with Diggs and SEPTA's Response: Alleged Quid Pro Quo and Hostile Environment Harassment

In 1997, Plaintiff had a consensual sexual relationship with Diggs. DSOF ¶¶ 4-5. At the time, Diggs and Plaintiff were not in the same chain of command. Def. Ex. A (Griggs Dep.) 63:12-14. The two remained cordial with each other following the end of their two-month relationship. Pl. Opp'n DSOF ¶¶ 4-5.[2]

In 2008, Diggs became SEPTA's Assistant General Manager for Operations and began reporting to SEPTA's General Manager, Joe Casey. PSOF ¶ 30.[3] From August 2009 through

---

[2] Although Defendants concede for purposes of summary judgment that the length of the relationship was two months, Diggs has indicated that the relationship actually lasted over two years. DSOF ¶ 5 n.1.
[3] While Plaintiff notes that another SEPTA employee accused Diggs of harassment, PSOF ¶ 34, Plaintiff offers no proof that the accusation was meritorious. Plaintiff also quotes Diggs' deposition out of context to suggest that Diggs did not know the meaning of the phrase, "quid pro quo harassment." See PSOF ¶ 35.

4

Diggs's forced retirement from SEPTA in August 2012, Plaintiff was in Diggs's chain of command. DSOF ¶ 9. For a portion of that same time period (August 2010 until November 2011), Diggs lived with Plaintiff and Plaintiff's two children in Plaintiff's home. DSOF ¶¶ 8, 13.[4] Plaintiff and Diggs were once again in a sexual relationship from an unspecified time beginning in 2010 until June 2011, at which time Plaintiff informed Diggs that the relationship was over. PSOF ¶ 18; Pl. Ex. T (Griggs Decl.) ¶¶ 6, 8, 10, 11. Plaintiff alleges this 2010 and 2011 relationship was nonconsensual, but she provides no details as to the frequency or severity of any alleged unwelcome sexual conduct. PSOF ¶ 19.

According to Plaintiff, Diggs harassed his way into her home. Pl. Ex. T (Griggs Decl.) ¶ 10. Plaintiff alleges that she ran into Diggs at a Wawa convenience store one day in late 2008. PSOF ¶ 16. Plaintiff avers that sometime thereafter, Diggs "began relentlessly harassing Plaintiff to start a sexual relationship" (although Plaintiff does not provide any specificity as to when, where, or how this alleged harassment occurred except to note that it was "[o]n several occasions prior to 2010"). Id.; Pl. Ex. T (Griggs Decl.) ¶ 6. According to Plaintiff, Diggs told her that he was a powerful man at SEPTA and that Plaintiff would have to submit to his sexual advances if she wanted to advance her career at SEPTA. PSOF ¶¶ 17, 24.

Diggs never notified Casey or anyone else at SEPTA that he lived at Plaintiff's house. PSOF ¶ 30. Defendants agree with Plaintiff that the relationship between Plaintiff and Diggs violated SEPTA's sexual harassment policy,[5] and that Diggs was aware of that fact. PSOF ¶¶ 30, 47; Def. Ex. S at SEPTA-GRIGGS-000678 (a.k.a. Pl. Ex. 1).

---

[4] Defendants claim Diggs considered himself to be part of Plaintiff's family while he was living with her, while Plaintiff denies she ever considered Diggs to be family. DSOF ¶ 10. The parties agree, however, that Diggs paid household expenses for several months and purchased furniture for Plaintiff. Id. Diggs also purchased a BMW for Plaintiff in August 2011, which she rejected. PSOF ¶ 18.

[5] Plaintiff was unaware of this policy until November 2011. PSOF ¶ 22.

Plaintiff similarly never informed any of her superiors of the relationship, that Diggs was allegedly sexually harassing her, or that Diggs had created a hostile work environment for her. DSOF ¶¶ 66, 67. Instead, SEPTA appears to have discovered the relationship in the fall of 2011 by virtue of the fact that Diggs was using Plaintiff's address. DSOF ¶ 38; PSOF ¶ 21.[6]

SEPTA did not discipline or punish Diggs until August 2012, when SEPTA allowed Diggs to retire in lieu of termination. SEPTA took this action shortly after Plaintiff amended a January 2012 Pennsylvania Human Relations Commission ("PHRC") complaint in July 2012 (discussed in greater detail below) to add allegations about Diggs's purported harassment. DSOF ¶ 28; PSOF ¶ 32. According to Diggs, an investigation of Diggs's conduct performed by an outside law firm concluded in April or May 2012 that he had violated SEPTA's harassment policy. Pl. Ex. B (Diggs Dep.) 68:17-69:22.

### 3. Plaintiff's Complaints of Discrimination Against SEPTA

In 2006, Plaintiff sued SEPTA and Leslie Hickman for race and gender discrimination after filing a complaint with the PHRC in 2004. PSOF ¶¶ 2-3. The case settled a year later.[7]

At that time, Lorraine McKenzie was (and currently still is) SEPTA's Director, Equal Employment Opportunity ("EEO")/Affirmative Action and Employee Relations. PSOF ¶ 73. According to Plaintiff, McKenzie developed a negative attitude toward Plaintiff after McKenzie participated in defending SEPTA from Plaintiff's discrimination complaint. PSOF ¶ 50.

Plaintiff filed two additional complaints with the PHRC in January 2012 and May 2012, each pertaining to one of the seven purported failures to promote (discussed in further detail

---

[6] Diggs also testified that he informed Liberi that Diggs was living at Plaintiff's house. PSOF ¶¶ 42, 49. Liberi was one of Griggs' supervisors, but a subordinate to Diggs. Liberi testified that he did not read SEPTA's harassment policy as requiring anyone other than the involved employees themselves to report a consensual relationship between employees in the same chain of command, and thus he did not report the relationship. PSOF ¶ 49.

[7] When Plaintiff received the August 2009 transfer to her current position at SEPTA, Plaintiff left Hickman's chain of command. Plaintiff alleges that Diggs had Hickman transferred to once again supervise Plaintiff. PSOF ¶¶ 5-9, 23. Plaintiff also asserts that Diggs promoted Jim Foley to Chief Officer of Rail Transportation without posting the position. PSOF ¶ 25.

below). DSOF ¶¶ 27, 37; PSOF ¶¶ 14, 15. She amended these complaints in July 2012 and January 2013, respectively.[8] DSOF ¶¶ 27, 37; PSOF ¶¶ 14, 15. The 2012 amendment concerned Diggs's purported harassment, while the 2013 amendment concerned a third failure to promote. DSOF ¶¶ 28, 46. Although Plaintiff asserted both race and sex discrimination in these complaints, her claims in the instant action are solely for sex discrimination. As this Court has previously noted, Plaintiff's PHRC complaints did not include allegations relating to four of the seven instances in which Plaintiff claims that she was denied a promotion either on the basis of her gender or as retaliation. ECF 9 at 3.[9]

### 4. Allegations of Both Retaliatory Comments and Retaliation Other Than Failures to Promote

As to comments purporting to show retaliatory animus, Plaintiff alleges that Liberi (Diggs's direct report) told a room full of SEPTA coworkers that Plaintiff would never get promoted if she kept suing SEPTA. PSOF ¶ 52. Plaintiff also alleges that in 2010, Diggs said that she "burned every bridge" with SEPTA because of her 2006 law suit. Pl. Ex. A (Griggs Dep.) 81:6-10. Plaintiff nevertheless was issued positive performance reviews that same year. PSOF ¶ 55.

As to retaliatory disparate treatment other than the alleged failures to promote, Plaintiff claims that at some unspecified time after she assumed her role as Assistant Director in 2009, a SEPTA EEO employee refused to communicate with her regarding work-related discipline of a subordinate. PSOF ¶ 12. Plaintiff further claims that she did not take a position because SEPTA

---

[8] The January 2013 amended complaint was not served until March. Def. Ex. Y.

[9] In a prior Opinion, the Court denied Defendants' Motion to Dismiss as to these four counts while noting Defendants could renew their administrative exhaustion argument "at the summary judgment stage . . . based on the administrative record in its entirety." ECF 9 at 9-10. In renewing the argument, however, Defendants merely copied and pasted sections of their Motion to Dismiss briefing without explaining what if any record developments warrant a different outcome. Compare ECF 3 at 5-6 with ECF 25 at 13-14. Plaintiff nevertheless failed entirely to respond. See ECF 28. To the extent the parties wish to pursue this argument in another appropriate brief, the Court encourages them to explain what if any record developments have occurred since the Court ruled on Defendants' Motion to Dismiss that might warrant a change from the Court's prior ruling.

refused to allow Plaintiff to pay an out-of-city tax rate once she was back in Philadelphia even though SEPTA had allowed another employee this accommodation. PSOF ¶ 120. Plaintiff also conclusorily asserts that she has experienced animosity and antagonism from other SEPTA managers. PSOF ¶ 119.

### B. Allegations Related to SEPTA's Failures to Promote Plaintiff

The following allegations relate to the seven instances in which Plaintiff alleges that she was denied a promotion either on the basis of her gender or in retaliation for her various discrimination complaints.

#### 1. Fall 2011: Plaintiff Applies for Director of Transportation Positions

In support of her claim that she was illegally denied a promotion to Director of Transportation, Plaintiff has submitted evidence related to both SEPTA's interview process and to the qualifications of the candidates who ultimately received the promotions.

##### a. The Positions and Candidates

On September 20 and October 17, 2011, SEPTA solicited applications to fill two Director of Transportation positions that were expected to become vacant on December 1, 2011. Seventeen SEPTA employees out of twenty who applied, including Plaintiff, were selected to interview; Plaintiff's interview was Friday, November 18. DSOF ¶¶ 14-17; Def. Ex F. The positions were under Diggs' chain of command, though he was not the immediate supervisor. PSOF ¶¶ 36, 60. Diggs was aware that Plaintiff was applying, and the application and interview process occurred near the time that Plaintiff made Diggs leave her home in November 2011. PSOF ¶ 38.

The positions ultimately went to two male employees, Jim Schirg and Rocky Vogelman. Hickman personally visited Plaintiff to inform Plaintiff that Plaintiff would not be "the first

female director." DSOF ¶ 26; *accord* PSOF ¶¶ 59, 80. This failure to promote constituted the basis for Plaintiff's January 2012 PHRC complaint. DSOF ¶ 27.

### b. The Interview Process

A panel of four individuals considered the applicants:

- Leslie Hickman (who was a defendant in Plaintiff's 2006 law suit against SEPTA, PSOF ¶ 51);

- David Rogers, Senior Director, Transportation South;

- Lorraine McKenzie (SEPTA's EEO Director at the time of the interview and at the time of Plaintiff's 2006 law suit); and

- Maureen Lichtner, Director, City Schedules & Support Services.

DSOF ¶ 18.

Hickman selected Rogers and Lichtner to be on the panel. PSOF ¶¶ 65-66. Plaintiff does not allege that either Lichtner or Rogers knew of Plaintiff's 2006 claims against SEPTA, and both submitted declarations saying they did not know. Def. Reply Ex. D (Lichtner Decl.) ¶ 21; Def. Reply Ex. E (Rogers Decl.) ¶ 21.

McKenzie was not originally on the interview panel. The parties dispute how and why McKenzie was added. According to Plaintiff, Diggs told her that he had McKenzie added and that McKenzie disliked Plaintiff following Plaintiff's 2006 suit. PSOF ¶¶ 18, 50. Defendants, by contrast, argue that Diggs had no involvement, and that SEPTA's then-General Manager (Casey, Diggs' superior) and Assistant General Manager of Human Resources (Susan Van Buren) decided to add McKenzie to the panel upon discovering that Diggs was living in Plaintiff's home. Pl. Opp'n DSOF ¶ 18; Def. Opp'n PSOF ¶¶ 18, 50, 60; 77.[10] Yet despite

---

[10] Plaintiff makes much of the fact that McKenzie testified she wanted to "ensure fairness" by being on the interview panel. PSOF ¶ 78.

Defendants' contention, a number of SEPTA employees tell different stores: Hickman and McKenzie, for example, disagree as to whether Hickman asked McKenzie to be on the panel,[11] and Hickman and Liberi (a supervisor of the position who reported to Diggs) disagree as to whether or not Liberi told Hickman that McKenzie would be added.[12]

Hickman prepared a series of questions and ideal responses for the panel to use in evaluating candidates. DSOF ¶ 19. Hickman did not prepare a precise rubric assigning a set number of points for an answer to a question. PSOF ¶ 67. Rather, each member of the panel independently assigned points to a candidate's answers and then ranked the candidates based on comparing the total points assigned. DSOF ¶ 20.[13] Hickman testified that there was some subjectivity among panelists in awarding points based on responses, but that a perfect score would have been 15 points and that points were added or deducted based on the presence or absence of topics from the expected answers. PSOF ¶ 71; Def. Ex. G. (Hickman Dep.) 75:9-24. The four members of the panel unanimously selected Schirg and Vogelman as the most qualified candidates based on the interview process, and Vogelman and Schirg were ultimately chosen to fill the positions. DSOF ¶¶ 21-22.

### c.  Purported Evidence That the Interview Process Was Rigged

According to Plaintiff's coworker, Darlena Clarkson, Hickman stated in October 2011 that Schirg and Vogelman were going to get the positions even before interviews had commenced. Pl. Opp'n DSOF ¶ 21; PSOF ¶ 55.[14]

---

[11] Compare Pl. Ex. D (McKenzie Dep.) 10:9-12 (McKenzie saying Hickman asked her to be on the panel) with Pl. Ex. C (Hickman Dep.) 55:21-57:11 (Hickman denying she included McKenzie on the panel and stating she only spoke to McKenzie on the day of the first interview); PSOF ¶ 75.

[12] Compare Pl. Ex. C (Hickman Dep.) 56:4-8 (Hickman saying Liberi informed her) with Pl. Ex. E (Liberi Dep.) 25:14-17 (Liberi denying that assertion); PSOF ¶¶ 68, 70.

[13] Schirg testified that he was never asked any follow-up questions or to explain the answers he initially provided in response to the panel's questions. PSOF ¶ 81.

[14] Plaintiff similarly averred that at one unspecified point in time, Diggs was going to arrange for Plaintiff to be on an interview panel to choose a predetermined candidate for a different SEPTA position. PSOF ¶ 26.

### d. Qualifications of Plaintiff Versus Schirg and Vogelman

At the time of their selection to fill the positions, Vogelman and Schirg had nine and ten years of Deputy Director experience, respectively. DSOF ¶ 23. Plaintiff's resume only listed two years of Deputy Director experience, but Plaintiff avers that the titles of Deputy Director and Assistant Director are interchangeable and that she had been an Assistant Director for fourteen years before becoming a Deputy Director in 2009. Pl. Opp'n DSOF ¶ 24. Plaintiff also received a positive evaluation in her first year as Deputy Director. PSOF ¶ 55.

Defendants concede that Plaintiff was listed as "one of the most qualified candidates" on her employee intake form, while Schirg was listed as "meets minimum job qualifications, but is NOT one of the most qualified candidates." Pl. Ex. 97, 98; PSOF ¶ 58. Schirg also did not have a college degree, while Plaintiff did. PSOF ¶¶ 81.

### 2. January 2012: Plaintiff Applies for Director of Service Operations, Customized Community Transportation

In January 2012—several days after Plaintiff filed her PHRC complaint concerning SEPTA's failure to promote her to Director of Transportation—Plaintiff and twenty-two other individuals applied for the position of Director of Service Operations, Customized Community Transport ("CCT"). Def. Exs. L, N; DSOF ¶¶ 29, 30. Plaintiff and twelve others were asked to interview. DSOF ¶ 30. A panel of three individuals considered the applicants:

- Warren Montague, the position's Hiring Manager;
- Lillie Claitt, Director, Disadvantaged Business Enterprise Program; and
- James Fox, Director, System Safety & Risk Management.

DSOF ¶ 31. Francis Brandis was unanimously ranked the highest applicant and awarded the position. DSOF ¶ 33. Brandis had worked in the role of Manager, Contracts Compliance in the

11

CCT division for 17 years, while Plaintiff had no experience with the CCT Division. DSOF ¶¶ 34-35.

This failure to promote constituted the basis for Plaintiff's second PHRC complaint (first filed May 2012). DSOF ¶ 37. Plaintiff has not offered any evidence beyond her own conjecture that Diggs had any input or influence on this panel's hiring decision. PSOF ¶¶ 84-86.

### 3. September 2012: Plaintiff Applies for Director, Customer Development and Research

In September 2012, SEPTA posted a job opening for Director, Customer Development and Research. Plaintiff and twenty other SEPTA employees applied; Plaintiff was not selected to interview. DSOF ¶¶ 39-41; PSOF ¶ 88.

Plaintiff asserts, largely with citations to unrelated performance reviews or other acknowledgements of her successful job performance, that she was qualified for this position. Pl. Opp'n DSOF ¶¶ 41, 43; PSOF ¶¶ 91, 93. Plaintiff does not dispute, however, that the job required "demonstrated research and analytical skills." Pl. Opp'n DSOF ¶ 42. Nor does Plaintiff dispute that she lacked this skill. Pl. Opp'n DSOF ¶ 43.[15]

Plaintiff points to the fact that Frank Kennedy was initially rejected for an interview for failure to meet the minimum qualifications, but then accepted. PSOF ¶ 92. Defendants proffer an email from Kennedy explaining why he fulfilled the customer-related research criteria, although the email simply asserts that Kennedy had "[c]ustomer related research . . . throughout [his] career at SEPTA which would be 28 years (1984-2012) and roughly six years at jobs before coming to SEPTA." Def. Reply Ex. G (SEPTA-GRIGGS-001707).

---

[15] Plaintiff highlights the fact that a letter she received from SEPTA states that SEPTA seeks to hire applicants who "are deemed most qualified for the position," Pl. Ex. 83, but that the candidate who received the job was only initially rated as meeting the minimum qualifications rather than "most qualified." Pl. Ex. 95; PSOF ¶ 90.

12

This failure to promote formed the basis for Plaintiff's January 2013 amendment to her May 2012 PHRC complaint. DSOF ¶ 46.

### 4. November 2012: Plaintiff Applies for Senior Director, Subway/Elevated

On November 14, 2012, Plaintiff applied for the position of Senior Director, Subway/Elevated. DSOF ¶ 47. A panel of three individuals considered applications:

- James Foley;[16]
- David Rogers;[17] and
- Aleta Evans-Washington.

DSOF ¶ 48. As with other SEPTA interviews, each member of the panel evaluated the candidates based on preapproved criteria and awarded points for each candidate's response to questions. DSOF ¶ 49.

Michael Kolesnick, an employee who has served as a Director for over fifteen (15) years, was chosen for the position. DSOF ¶¶ 50-51. Plaintiff, by contrast, served only as Acting Director of one SEPTA district from December 1, 2011 through February 2012. DSOF ¶ 52.

This failure to promote is one of four for which Plaintiff never filed a new or amended PHRC complaint.

### 5. June 2013: Plaintiff Applies for Senior Director, Surface Transportation

On June 14, 2013, Plaintiff applied for the position of Senior Director, Surface Transportation. DSOF ¶ 53. A panel of four individuals considered applications:

- Thomas Nestel, SEPTA's Chief of Transit Police;[18]

---

[16] Defendants admit that without an interview, Diggs appointed Foley in 2011 to Foley's current position with SEPTA. Def. Opp'n PSOF ¶ 114.
[17] Plaintiff avers that Rogers substituted for Liberi, the Hiring Manager, after Plaintiff was selected to be interviewed. Pl. Opp'n DSOF ¶ 48.
[18] PSOF ¶ 101.

- Joshua Gottlieb;[19]

- Yolanda Romero; and

- Henry Davis.[20]

DSOF ¶ 54. Thomas Marcucci was chosen for the position. DSOF ¶ 56. Marcucci had held a Director of Transportation position since 2009; neither he nor Plaintiff had previously held a Senior Director position. DSOF ¶¶ 57-58. Plaintiff notes that an internal email from a SEPTA recruitment manager before interviews commenced could be interpreted as questioning if Marcucci met the minimum qualifications for the job. Pl. Ex. 55; PSOF ¶ 94. Plaintiff also had ten years' more experience in an Assistant Director position before Marcucci assumed a position on the same grade level. PSOF ¶ 99.

Nestel testified that he knows nothing about the responsibilities of this position other than that it is "a level of management and transportation that was equivalent to [his] inspector." Pl. Ex. J (Nestel Dep.) 15:17-16:6; PSOF ¶ 103. Nestel's appointment to the hiring panel appears to violate SEPTA's interview procedures. PSOF ¶ 101. Nestel also testified that he does not know how the scores reflected on his interview scoring sheet for either Griggs or Marcucci were calculated or who prepared the scoring forms. PSOF ¶ 110.

Liberi claimed that Gottlieb was the hiring manager for this position, even though internal SEPTA documents identified Liberi as the actual hiring manager. PSOF ¶¶ 95, 97. Liberi also testified that he was not involved in preparing interview questions for this position even though internal SEPTA communications show he was. PSOF ¶ 96. At the time Marcucci was chosen for the position, Liberi was his immediate supervisor. PSOF ¶ 100.

---

[19] Liberi initially testified that Gottlieb was not on this panel, but then testified that Gottlieb was the hiring manager. PSOF ¶ 95.

[20] Plaintiff avers that Davis once asked Plaintiff for the number of the attorney she used in her 2006 discrimination complaint against SEPTA because Davis was considering suing SEPTA. Pl. Ex. A (Griggs Dep.) 96:10-13; see PSOF ¶ 87.

This failure to promote is one of four for which Plaintiff never filed a new or amended PHRC complaint.

### 6. November 2013: Plaintiff Applies for Director of Transportation, Surface Transportation

On November 25, 2013, Plaintiff applied for the position of Director of Transportation, Surface Transportation, and she was selected for an interview. DSOF ¶ 59. The requisition for the position was put on hold in January 2014, and in September 2014 it was canceled before any interviews occurred. DSOF ¶ 60. A SEPTA employee named Jack Powers was awarded the position without interview. PSOF ¶ 116. This failure to promote is one of four for which Plaintiff never filed a new or amended PHRC complaint.

### 7. February 2014: Plaintiff Applies for Director of Support Services

On February 6, 2014, Plaintiff applied for the position of Director of Support Services in the EM&C Department. DSOF ¶ 61. A panel of three individuals considered applications:

- Pat Morris;
- Kim Heinle (male); and
- Henry Davis.

DSOF ¶ 62. Edward Wallace was chosen for the position. DSOF ¶¶ 64-65. Plaintiff alleges that Wallace had been once promoted to Director for Rail Transportation Market/Frankford Cashiers but then demoted back to Assistant Director for poor leadership and bad decision making. Pl. Opp'n DSOF ¶ 64. Defendants highlight that Wallace had ten (10) years of experience in the EM&C Department, while Plaintiff alleges she had six (6) years of similar experience and that SEPTA used to swap Plaintiff's and Wallace's areas of responsibilities repeatedly during the 1990s. DSOF ¶ 65. This failure to promote is one of four for which Plaintiff never filed a new or amended PHRC complaint.

**IV.     Analysis**

Applying the appropriate standard of review, this Court concludes that Defendants are not entitled to summary judgment.

**A.  Standard of Review**

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, the materials in the record show "that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

In employment discrimination cases, the summary judgment standard "is applied with added rigor . . . [because] intent and credibility are crucial issues." Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431 (3d Cir.1997) (quoting Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1162 (7th Cir. 1994)). The Third Circuit has stated that "summary judgment is . . . rarely appropriate in [employment discrimination cases]." Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 509 (3d Cir.1996). "Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.'" Id. at 509-10 (quoting Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 899 (3d Cir. 1987) (en banc)).

### B. Summary Judgment Shall Be Denied

Based on the above summary of the claims made by Plaintiff in her complaint, and the review of Plaintiff's declaration and sworn testimony at her deposition, the Court concludes that there are many disputed issues of fact that prevent granting summary judgment to Defendants. At least some of Plaintiff's claims are overlapping, and some are stronger than others. However, since inferences on a motion for summary judgment must be made in favor of the non-moving party, the Court must credit Plaintiff's factual showings.

A motion for summary judgment is not the occasion to sort out all of Plaintiff's claims; the Court will not engage in claim-by-claim analysis, because that time-consuming task may not result in any definitive legal holding. Plaintiff's facts, with all favorable inferences drawn therefrom, may warrant the jury in finding for her. However, the Court believes that the nineteen (19) allegations must be limited to several discreet issues that will make the trial understandable for the jury without undue complication. The Court will give Plaintiff a deadline with the

opportunity to revise her claims so that her case can be presented to a jury more clearly, followed by deadlines for motions in limine,[21] and a date for a final pretrial conference.

      An appropriate Order follows.

O:\CIVIL 14\14-6226 griggs v. septa\14-cv-6226 Griggs v. SEPTA MSJ opinion.docx

---

[21] Among other issues, the Court would appreciate briefing on the issue of whether allegedly harassing conduct that occurs outside the workplace (such as Diggs's alleged harassment of Plaintiff in her home) is admissible to prove hostile work environment harassment under Title VII.  There is a circuit split on this issue and the Third Circuit does not appear to have definitively weighed in.  See Alisha A. Patterson, None of Your Business: Barring Evidence of Non-Workplace Harassment for Title VII Hostile Environment Claims, 10 U. Cal. Davis Bus. L.J. 237, 252 (2010).